United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 07, 2023
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-90794** |
| **BARRETTS MINERALS INC.,** | § | |
| ***et al.,*** | § | |
| Debtors. | § | **Jointly Administered** |
| | § | **CHAPTER 11** |

### ORDER ON MOTION TO TRANSFER VENUE

The Official Committee of Unsecured Creditors moves to transfer venue of this case to the United States Bankruptcy Court for the District of Montana. The Court held an evidentiary hearing on venue transfer on December 1, 2023. Supplemental briefing was requested on (1) whether an entity with no debt obligations can be a debtor under the Bankruptcy Code; (2) whether a debtor's "principal assets" may be located in more than one district under 28 U.S.C. § 1408(1); and (3) the level of access provided by the District of Montana's remote appearance procedures.

Because Barretts Minerals, Inc.'s Bay City, Texas, facility is one of its principal assets, the Southern District of Texas is at least one of the proper venues for this case under § 1408.

The Committee's evidence does not demonstrate that the District of Montana is a more convenient venue than the Southern District of Texas. Venue will not be transferred.

### I.    THE BAY CITY FACILITY IS A PRINCIPAL ASSET OF BMI

Under 28 U.S.C. § 1408:

> [A] case under title 11 may be commenced in the district court for the district—(1) in which the domicile, residence, principal place of business in the United States, or principal

1 / 7

assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district . . . .

Section § 1408 contemplates that a debtor's "principal assets" may be located in more than one district. *In re Mid Atlantic Retail Grp., Inc.*, No. 07-81745, 2008 WL 612287, at *3 (Bankr. M.D.N.C. Jan. 4, 2008). At argument on December 1, 2023, all counsel were candid with the Court on this issue. All parties agreed with the concept that "principal assets" could be located in more than one District. As the court explained in *Mid Atlantic*, "a debtor's principal assets can be located in several different districts because '[t]he venue statute does not require that only *the* principal asset may support venue; rather, venue may be proper in a district where principal assets are located. Thus, a debtor may have more than one appropriate venue based upon more than one principal asset.'" *Id.* (alteration in original) (quoting *In re Ross*, 312 B.R. 879, 889 (Bankr. W.D. Tenn. 2004)). The *Mid Atlantic* court found that, although the debtor's principal assets (retail inventory) were located in several states, the Middle District of North Carolina was an appropriate venue since around 19% of the debtor's assets were located there. *See id.* Other courts have reached similar holdings. *See In re Ortiz*, No. 15-05938 (ESL), 2017 WL 770611, at *3 (Bankr. D.P.R. Feb. 27, 2017); *In re Ross*, 312 B.R. 879, 888–89 (Bankr. W.D. Tenn. 2004).

The evidence is uncontested about the assets located at the Bay City facility. BMI has continuously maintained business operations at the Bay City facility for about twenty-five years. ECF No. 340 at 4. The

facility is one of two facilities responsible for packing BMI's talc product and the only facility that produces BMI's Opti-Block product. ECF No. 340 at 4–5; ECF No. 396 at 50–51. The uncontested testimony at the December 1st hearing proves that the Opti-Block product was specifically developed to satisfy market needs, and it has been doing so for around the twenty-five years that the facility has existed. ECF No. 340 at 4–5; ECF No. 396 at 50–51 ("[W]e went down to Texas to satisfy a certain market need . . . and what the people do is they take processed talc from Montana and they blend it with proprietary minerals and create a product that is specifically designed . . . for that market down here. . . . [I]t's a key part of the brand . . . ."). The uncontested testimony is that the Bay City facility is a "key part" of the company's product line. BMI's evidence conclusively demonstrates that the facility is a necessary and principal asset supporting BMI's business operations.

BMI's Bay City facility is a "principal asset" for purposes of § 1408(1). Venue is proper in the Southern District of Texas.

In addition to the filing by BMI, its affiliate (Barretts Ventures Texas LLC) also filed a petition in this District. It is questionable whether that entity is a bona fide debtor under chapter 11. That may be an issue for a separate day. That case raises the issue of whether an entity without debts (a contested question of fact) can be a chapter 11 debtor. Because the venue issue is determined without recognizing that filing, the Court need not presently address whether an entity with no debts can qualify to be a debtor under the Bankruptcy Code.

## II. VENUE IS RETAINED IN THE SOUTHERN DISTRICT OF TEXAS

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Transfer of venue applies to bankruptcy proceedings through 28 U.S.C. § 1412: "A district court may transfer a case or

proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

A party seeking to transfer venue must show "good cause." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008). "The 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Id.* "When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interests of justice.'" *Id.* (alteration in original). "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." *Id.*

The Fifth Circuit considers the following factors when determining venue transfer in a bankruptcy proceeding:

1. The proximity of creditors of every kind to the Court;
2. The proximity of the debtor to the Court;
3. The proximity of witnesses necessary to the administration of the estate;
4. The location of assets;
5. The economic administration of the estate;
6. The necessity for ancillary administration if bankruptcy should result.

*In re Commonwealth Oil Refinancing Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979) ("*CORCO*").

The first factor considers the proximity of creditors of every kind to the Court. It is important to note that BMI's main creditors in this case—those with the primary economic interest in BMI's estate—are the asbestos tort claimants. There are currently no tort claimants in Montana. ECF No. 396 at 91–92. Texas has a greater distribution of

asbestos litigants, with six lawsuits currently pending in state.  ECF No. 340 at 3.  Of the twenty-six law firms with the most significant representations of parties asserting talc claims, none are located in Montana, and four are located in Texas.  ECF No. 363-14 at 14–17.  Although a number of BMI's other creditors are located in Montana, it does not appear that those creditor's interests will be adversely affected by this bankruptcy case.  It is undisputed that this case was filed to resolve asbestos tort claims.  This factor weighs toward retaining venue in this District.  ECF No. 111 at 1; ECF No. 363-14 at 13.

With respect to the proximity of the Debtor factor, "[t]he concern is with the corporation's employees who must appear in court, not with the employees who are on the production line."  *CORCO*, 569 F.2d at 1248.  BMI is currently under the leadership of its Chief Restructuring Officer based in California.  ECF No. 340 at 7.  BMI's President and Chief Executive Officer is based in New York.  ECF No. 340 at 7.  None of BMI's executives are based in Montana.  ECF No. 340 at 7.  BMI's evidence indicates that travel between California/New York and Houston is more convenient and less expensive than travel between these cities and Bozeman Yellowstone International Airport, the only airport in Montana offering direct flights between the cities.  ECF No. 402-9; ECF No. 402-10.  The evidence is undisputed.  No Montana residents are expected to be called as witnesses in this case.  ECF No. 340 at 7.  This factor weighs toward retaining venue in this District.

The next factor considers the proximity of witnesses necessary for the administration of the estate.  None of BMI's core management is located in Montana.  None of the estate professionals who may be called as witnesses are located in Montana.  BMI's principal restructuring professionals are located in Los Angeles, New York, and Washington, D.C.  ECF No. 340 at 7.  These individuals are necessary to the administration of BMI's estate and the ones likely to be called as witnesses during any proceeding.  ECF No. 340 at 7.  BMI submitted evidence that travel between California/New York/Washington, D.C., and Houston is more convenient than travel between the states and

Montana. ECF No. 402-9; ECF No. 402-10; ECF No. 402-11. This factor weighs toward retaining venue in this District.

The next factor considers the location of assets. CORCO instructs courts to also consider books and records. *CORCO*, 569 F.2d at 1248. With respect to the books and records, *CORCO*'s reasoning is very relevant. There, the court found that "[a]lthough most of CORCO's original books and records are in Puerto Rico, instant access through CORCO's computer system is available in San Antonio." *Id.* The same reasoning applies today. This case was brought to address the financial implications of asbestos tort litigation. The location of BMI's operating assets is unlikely to have any impact on achieving this objective. This factor is neutral.

The next factor considers whether "the requested transfer would promote the economic and efficient administration of the estate," which *CORCO* held to be the "most important consideration." *CORCO*, 596 F.2d at 1247. For this factor, the *CORCO* court found that CORCO's management, who were tasked with "working up a financial plan of arrangement acceptable to all relevant parties," were located in the chosen forum of San Antonio. *Id.* In the instant case, none of the professionals tasked with this duty are located in Montana or Texas. This factor is neutral.

*CORCO* also found that "the debtor's estate could be administered more economically in San Antonio." *Id.* The parties have not submitted evidence regarding the relative economies of conducting this case in Texas or Montana. To answer the Court's question during the December 1st hearing, the parties did submit evidence regarding the relative accessibility of the Montana Bankruptcy Court. The Committee submitted evidence that the Montana Bankruptcy Court allows virtual hearing participation. ECF No. 398-1. BMI has presented valid concerns over the District of Montana's remote participation procedures. BMI presented evidence indicating that the District of Montana's remote appearance procedures are not available as a matter of right and may not be available in some contested matters. Montana Local Rule

5074-1(c) ("Requests to appear remotely in matters that are contested may not be permitted at the Court's discretion depending on the issues to be adjudicated."). For video appearance, Montana Local Rule 5074-1(c) also requires a filing of notice three days prior to the hearing, which BMI validly asserts may interfere with the ability of parties to participate if another party requests emergency relief. In contrast, remote participation is permitted for nearly all bankruptcy hearings in the Southern District of Texas as a matter of right. The potential unavailability of remote participation in the District of Montana would require more frequent physical appearance of professionals administering the case, leading to increased costs to the estate. Under these circumstances, the economics of administering the case weigh toward retaining venue in this District.

The final factor considers the necessity for ancillary administration if bankruptcy should result. There is no evidence on this issue. It is a neutral factor.

*CORCO* also instructs courts to consider whether transferring the case is in the interest of justice. *Id.* The main concern that this implicates is ensuring that the rights of the asbestos litigation claimants are properly adjudicated, and their claims properly administered. The Court does not doubt that either the District of Montana or the Southern District of Texas can accomplish this goal. This factor is neutral.

Considering all factors in their totality, the Court cannot conclude that the District of Montana is a clearly more convenient forum. Venue is retained in the Southern District of Texas.

SIGNED 12/07/2023

Marvin Isgur
United States Bankruptcy Judge