**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| BARRETTS MINERALS INC., *et al.*,[1] | Case No. 23-90794 (MI) |
| Debtors. | (Jointly Administered) |
| | **Ref: Docket No. 538** |

**PFIZER INC.'S MOTION TO AMEND THE JOINT STIPULATION AND AGREED**
**ORDER APPOINTING MEDIATOR AND GOVERNING MEDIATION PROCEDURE**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Pfizer Inc. ("**Pfizer**") by and through its undersigned counsel, respectfully submits this motion to amend (the "**Motion**") the *Joint Stipulation and Agreed Order Appointing Mediator and Governing Mediation Procedures* [Docket No. 538] (the "**Mediation Order**").[2] In support of the Motion, Pfizer respectfully states as follows:

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Barretts Minerals Inc. (8715) and Barretts Ventures Texas LLC (0787). The Debtors' address is 5605 North McArthur Boulevard, Suite 1000, PMB 139, Irving, Texas 75038.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Mediation Order.

4880-7372-2010

1

**Preliminary Statement**

2.      Pfizer has no objection to the Debtors' efforts to achieve consensual resolution with the talc claimants, including with the use of a mediator, as reflected in the proposed Mediation Order.  The Mediation Order, however, should not restrict Pfizer's or any other non-Mediation Party's rights with respect to future discovery in connection with plan confirmation, Pfizer's indemnification dispute with MTI, or otherwise.  Pfizer received a draft of the proposed Mediation Order for the first time on January 2, 2024, which the Debtors filed the following day even after Pfizer raised concerns about certain aspects of the proposed Mediation Order the same day. Nevertheless, the Debtors proceeded to file the proposed Mediation Order the next day, without alerting the Court that Pfizer had objections.

3.      Pfizer has continued discussions through the Debtors with the Mediation Parties regarding limited modifications to the Mediation Order to prevent the Mediation Parties from attempting later to invoke a mediation privilege to withhold information from non-Mediation Parties relevant to plan confirmation such as on good-faith negotiation.  Pfizer's suggested modifications are along the lines of the following (the "**Pfizer Modifications**"):

> Nothing herein shall alter, abridge or expand the rights or obligations of any Mediation Parties or non-Mediation Parties with respect to the discoverability or admissibility of communications, information, or documents related to or exchanged during the Mediation, including, without limitation, with respect to documents relating in any way to any proposed trust distribution procedures or matters related thereto or to plan confirmation, or to non-debtor Pfizer Inc.'s or non-debtor Minerals Technologies Inc.'s rights or obligations under the Reorganization Agreement between Pfizer Inc. and Minerals Technologies Inc., dated as of September 28, 1992, as amended.  All Mediation Parties' and non-Mediation Parties' rights, arguments, and objections with respect to such issues, including as to applicability and/or enforcement of Paragraph 53 of the Procedures for Complex Cases in the Southern District of Texas in this case, are expressly preserved.

Once this Court entered the Mediation Order, however, the Debtors reversed course and communicated that Pfizer should address its concerns directly with the Court.

4.        Adding the Pfizer Modifications to the Mediation Order serves to: (A) clarify that the Mediation Order does not create or expand any mediation privilege, common interest privilege, or other privilege beyond the scope of the protections that would be available in the absence of the Mediation Order, and otherwise reserve all non-Mediation Parties' rights and (B) ensure that Pfizer (and other non-Mediation Parties) is not precluded by the Mediation Order (to which it is not a party) from seeking any appropriate discovery into communications that may bear upon or affect the rights of non-Mediation Parties.

## Background

5.        In 1992, Pfizer and its then-subsidiary MTI entered into the Reorganization Agreement (as amended, the "**Reorganization Agreement**") to reorganize MTI from a wholly-owned subsidiary of Pfizer to an independent company owning the specialty minerals business of Pfizer.  In connection with the reorganization, Pfizer transferred to MTI and its subsidiaries substantially all of the assets of Pfizer's specialty minerals business.  This transfer included talc mines in Montana transferred from Pfizer to MTI's subsidiary and current debtor, Barretts Minerals Inc.

6.        As is customary in divestures and M&A transactions generally, MTI took responsibility and indemnifies Pfizer for all liabilities arising from the transferred businesses after MTI became an independent, publicly traded company in 1992.  Under the Reorganization Agreement, MTI indemnifies Pfizer for all liabilities from the transferred businesses other than certain liabilities expressly retained in the Reorganization Agreement by Pfizer.  The liabilities retained by Pfizer in relevant part are for "any product liability lawsuits or claims … to the extent

they allege damages or injury from the use or handling of, or exposure to, any product sold by the Business prior to the Reorganization Date [October 23, 1992]."

7.      Over the course of thirty years of dealing, MTI consistently acknowledged in its correspondence and dealings with Pfizer that MTI was required to indemnify Pfizer for liabilities arising out of its sale of talc after MTI became an independent, publicly traded company in 1992, including for the post-Reorganization Date portion of claims by a claimant alleging exposure to talc from MTI's businesses both before and after the Reorganization Date ("**Crossover Claims**" or "**Crossover Cases**").

8.      For years in its correspondence and dealings with Pfizer (a) MTI acknowledged that it owed indemnity obligations for Crossover Claims, (b) MTI itself proposed to Pfizer allocations of defense and settlements/judgments in each Crossover Case based on a time-on-the-risk allocation of allegations in each such case, and (c) MTI paid its share of joint defense costs in Crossover Cases based on a time-on-the-risk allocation as between the pre-Reorganization Date and post-Reorganization Date time periods.

9.      Prior to June 2023, MTI did not deny – and, in fact, acknowledged – responsibility for the post-Reorganization Date part of such claims.  For the first time in June 2023, however, MTI reversed course and suddenly denied any indemnity responsibility for Crossover Claims. There is thus a significant dispute between Pfizer and MTI over their respective indemnification obligations under the Reorganization Agreement.[3]

---

[3]      There is additionally a dispute over past-due indemnity owed by MTI to Pfizer in connection with prior settlements of Crossover Cases.  While acknowledging its indemnification obligations to Pfizer on Crossover Claims and paying its proportionate share of joint defense fees and costs, MTI interposed various meritless objections to Pfizer's demands for indemnification.  Thus, notwithstanding Pfizer's negotiation and funding of numerous settlements of Crossover Cases that included full and final releases of MTI and its subsidiaries, MTI has not paid Pfizer a penny for its share of these settlements.

10.     For months since summer 2023, Pfizer has repeatedly sought to mediate its contractual indemnification dispute with MTI.  Pfizer believes that this dispute can best be mediated before a mediator focused solely on the contract dispute between non-debtors.  The Reorganization Agreement is a bipartite agreement between Pfizer and MTI, both non-debtors.  Pfizer's claims against MTI are **_direct_** contractual claims subject to New York law that are solely against a non-Debtor, MTI, and not either of the Debtors.  Pfizer believes that its contract dispute between non-debtors is best mediated with a separate mediator, one that is mutually agreeable to both Pfizer and MTI, rather than unilaterally selected by MTI (with input from other the other Mediation Parties, but not Pfizer) and then announced after the fact to and dictated upon the other party.  Pfizer remains prepared to mediate with MTI before a mutually agreeable mediator and has proposed a potential mediator and expressed openness to consideration of other candidates.  Barring agreement, Pfizer reserves all of its rights including to pursue breach of contract and declaratory judgment claims against non-debtor MTI.

### Relief Requested

11.     The Mediation is intended to cover a "comprehensive resolution of any and all issues in conjunction with a potential Plan and 524(g) Trust."  Mediation Order ¶ D.  If a comprehensive resolution is reached, the Mediation Parties may seek to use the resulting agreed-upon chapter 11 plan and trust distribution procedures ("**TDPs**") (which may qualify and value talc-related claims) to affect Pfizer's rights, defenses, and obligations.[4]  The Mediation Order should not be used to prevent discovery by a non-party to the mediation on matters that may be relevant to these proceedings—including on good faith and other issues relating to plan

---

[4] For the avoidance of doubt, Pfizer disputes the positions taken by BMI and MTI with respect to the Reorganization Agreement, and reserves all rights and defenses with respect thereto.

confirmation—or to an indemnity dispute between non-debtors.  Indeed, Pfizer has a material interest in ensuring that nothing in the proposed plan of reorganization or trust distribution procedures impacts or modifies its rights, defenses, and obligations as relates to MTI.  The Mediation Parties should not be allowed to shield from discovery discussions and documents that may affect Pfizer's rights and defenses or MTI's obligations.

12.     To address these concerns, by this Motion, Pfizer requests that the Courte exercise its equitable authority to amend the Mediation Order and enter an order substantially in the form attached hereto (the "**Proposed Order**") to include the Pfizer Modifications.

**Basis for Relief Requested**

**A.     Legal Basis**

13.     Pursuant to section 105 of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see generally In re Davis*, 170 F.3d 475, 492 (5th Cir. 1999) ("The basic purpose of § 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction.") (internal citations omitted).

**B.     As Applied**

14.     Discussions and documents relating to formulation of a chapter 11 plan TDPs, including claim values, eligibility criteria, and the tort system election procedures, could affect Pfizer and its rights, defenses and obligations or otherwise bear directly on issues going to plan confirmation.  In the *Imerys* case, for example, Judge Silverstein described the importance of TDPs:

> [T]he TDPs are one of the most important documents in the case.  In general, the TDPs will dictate the rights (and the limitations on those rights) of each tort claimant by, among other things, (a) establishing the claims resolution process, (b) classifying different types of tort claims; (c) providing for the treatment of each

claim and each class of claim; and (d) determining the assets that will be available to satisfy each unique class of tort claims.

*In re Imerys Talc Am.*, No. 19-10289, 2021 Bankr. LEXIS 428, at *12 (Bankr. D. Del. Feb. 23, 2021).  Given the importance of TDPs, discovery into their formation may be crucial in this proceeding.

15.     The mediation confidentiality/privilege should not be used to deprive non-Mediation Parties of access to related discussions and documents necessary to evaluate potential objections to plan confirmation or to its contractual or common law rights and obligations.  For example, without access to information regarding negotiation of TDPs, non-Mediation Parties would be prejudiced in their ability to determine if the TDPs were negotiated in good faith, or drafted in a manner potentially impairing Pfizer's contract rights or exposing it to new liabilities and costs.  *See, e.g., In re Global Indus. Techs., Inc.*, 645 F.3d 201, 214 (3d Cir. 2011) ("Indeed, the Plan-triggered explosion of new claims creates an entirely new set of administrative costs, including the investigative burden of finding any meritorious suits in the haystack of potentially fraudulent ones.").

16.     The Mediation Order contains certain provisions that arguably affect the rights of non-Mediation Parties to discovery by purporting to create an "absolute mediation privilege" and cloaking all mediation discussions with common interest privilege.  Mediation Order ¶ 17.  Pfizer and other non-Mediation Parties, who did not agree to the Mediation Order, should not be prejudiced by its provisions.   The Mediation Order should not create a privilege over communications, information, or documents related to the Mediation or exchanged during the Mediation that is broader in scope than the protections afforded by applicable law.  The Pfizer Modifications address these concerns in an equitable manner.

17.     Moreover, the Federal Rules of Evidence do not recognize a mediation privilege. Rule 408 of the Federal Rules of Evidence makes inadmissible settlement offers or "conduct or a statement made during compromise negotiations about the claim," but only when used "either to prove or disprove the validity or amount of a disputed claim" or for impeachment.  Fed. R. Evid. 408.  Nor does Rule 408 protect such information from discovery.  *Hyde & Hyde, Inc. v. Mount Franklin Food, LLC*, EP-11-CA-08, 2012 U.S. Dist. LEXIS 193668, at *5 (W.D. Tex. Jan. 6, 2012) (providing that Rule 408 does not create a settlement discussion privilege and merely serves to limit admissibility for certain purposes).

18.     Rule 408 strikes a proper balance of protecting certain settlement communications while allowing discovery into, and subsequent use as evidence of information relevant to third-party obligations.  Although Rule 408 excludes evidence from settlement discussions from being used to prove the validity or extent of an underlying claim, Rule 408(b) allows such evidence to be used "to prove bad faith negotiations, and to prove other wrongful activity that occurred during the settlement negotiations themselves."  *Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1256 (D. Or. 2009); *see also Hawk Tech. Sys., LLC v. Castle Retail, LLC*, No. 2:20-cv-2766, 2023 WL 5437454, 2023 U.S. Dist. LEXIS 148430, at *3 (W.D. Tenn. Aug. 23, 2023) (compromise negotiation evidence admissible to prove bad faith) (citing *Athey v. Farmers Ins. Exchange*, 234 F.3d 357 (8th Cir. 2000)).  If discussions and any documents exchanged are relevant to a later good-faith inquiry, such evidence should not be shielded from discovery. *Princeton Dig. Image Corp. v. Office Depot Inc.*, No. CV 13-239-LPS, 2017 WL 3420947, 2017 U.S. Dist. LEXIS 125909, at *5 (D. Del. Aug. 9, 2017) (under Rule 408, admitting exhibits that relate to settlements to establish that plaintiff breached an agreement in bad faith).

19.     The Fifth Circuit likewise has not recognized a federal mediation privilege, and the Southern District of Texas has sided with the majority of federal courts that have declined to recognize a "settlement negotiation" privilege. *Performance Aftermarket Parts Group, Ltd., v. TI Gr'p Auto. Sys, Inc.*, 2007 WL 1428628, at *3 (S.D. Tex. May 11, 2007) (Atlas, J.) (finding well-reasoned and persuasive the opinion in *In re Subpoena Issued to Commodity Futures Trading Comm.*, 370 F. Supp. 2d 201, 208–212 (D.D.C. 2005), *aff'd on other grounds*, 439 F.3d 740 (D.C. Cir. 2006)).[5]

20.     These concerns are especially pronounced in the context of multi-party comprehensive mediation in a mass tort case.  In addressing mediation privilege regarding comprehensive mediation in the mass tort context in *In re Boy Scouts of America*, Judge Silverstein recognized that shielding information about negotiations over trust distribution procedures from discovery is inconsistent with the "collective nature of a bankruptcy proceeding," that "the Court ultimately must rule on most settlements in the context of the bankruptcy case," and that "[n]ot all parties are involved in every aspect . . . [or] agree with the comprehensive resolution."  Tr. of Telephonic Ruling, *In re Boy Scouts of Am.*, No. 20-10343 (LSS), Docket No. 6798 at 11:16–23, 13:2–4 (Bankr. D. Del. Oct. 25, 2021).[6]  Judge Silverstein's reasoning applies with equal force in this case, and the Mediation Order should be modified to clarify that it is not creating a new mediation privilege that is any broader than the existing protections of Rule 408 of the Federal Rules of Evidence.

21.     In regard to the mediation privilege set forth in paragraph 53 of the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Procedures**"), the Debtors

---

[5] Other circuits are in accord.  *E.g., In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012); *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979); *but see Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979-83 (6th Cir. 2003) (recognizing federal mediation privilege).
[6] The *Boy Scouts* transcript is attached hereto as **Exhibit A**.

should not be able to simultaneously rely on the mediation in asking the Court to make good-faith and other findings at plan confirmation while barring discovery over the details of such negotiations.  In *Boy Scouts*, Judge Silverstein overrode a similar provision in the then-existing Local Rules in Delaware in light of the collective nature of this bankruptcy proceeding and the good-faith findings the Court was asked to make.  *See generally* Ex. A (Tr. of Telephonic Ruling), at 10–15.  These default rules work well in a traditional, two-party dispute in which parties resolve issues bearing only upon those two parties.  But application to a comprehensive mediation in a multi-party bankruptcy proceeding presents a "square peg, round hole" issue, even more so when the key affected parties are not a Mediation Party.  *Id*. at 11:24.  When a mediation is used as primary evidence to meet the good faith standard in the context of confirmation, discovery of such mediation must be allowed.  *See id.* at 13:14–18 (by using the fact of mediation to meet the Bankruptcy Code's good faith standard, the debtor has "put the mediation, at least with respect to the good faith of the TDPs, at issue").

22.     If and when the Debtors rely in any way on any aspects of the Mediation—for example, in connection with good faith or other issues at plan confirmation—discovery must be allowed into relevant aspects.  Paragraph 53 of the Complex Procedures cannot be used both as a sword and a shield, and the Debtors should not be allowed selectively pick and choose what aspects of their negotiations to make discoverable. In its current form, the Mediation Order creates an inequitable discovery process for the non-Mediation Parties.[7]  Therefore, amending the Mediation Order to include the Pfizer Modifications would be an equitable outcome.

---

[7] Pfizer reserves all of its rights as to application and/or enforcement of Paragraph 53 in this case.

**C.      Alternatively, Reconsideration of the Mediation Order is Appropriate**

23.      Alternatively, Rule 60(b) of the Federal Rules of Civil Procedure ("**FRCP**"), as incorporated by Federal Rule of Bankruptcy Procedure 9024, provides the Court discretion to relieve a party or its legal representative from a final judgment, order, or proceeding for several reasons, including but not limited to, any "reason that justifies relief."  Fed. R. Civ. P. 60(b)(6); Fed. R. Bankr. P. 9024.  This Motion is timely.  Pfizer respectfully requests that the Court grant the Motion under FRCP 60(b)(6).  "Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses" and "gives the court ample power to vacate judgment whenever such action is appropriate to accomplish justice." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005).  Several factors are relevant to considering a motion under Rule 60(b)(6), including (1) whether the motion was made within a reasonable time, (2) whether the movant had a fair opportunity to present his claim or defense, and (3) whether granting relief would be equitable.  *In re Al Copeland Enters, Inc.*, 153 F.3d 268, 272 (5th Cir. 1998).

24.      The factors for consideration under FRCP 60(b)(6) set forth by the Fifth Circuit in *Al Copeland* are favorable to Pfizer.  Pfizer filed the Motion in a timely manner, on the same day on which the Court entered the Mediation Order, and just a few days after the proposed Mediation Order was filed.

25.      Further, this dispute has arisen in a matter of days.  Pfizer did not have sufficient time to address its concerns with the Mediation Order prior to its entry.  The Debtors sent Pfizer a draft of the Mediation Order for the first time on January 2, 2024.  Over Pfizer's concerns, the Debtors filed the proposed Mediation Order on January 3, 2024.  The Court entered the Mediation

Order as proposed on January 5, 2024 while Pfizer was in the process of attempting to negotiate appropriate protective language with the Debtors. The relief is also equitable as described above.

**Reservation of Rights**

26.     To the extent the Court declines to amend the Mediation Order to reflect the relief sought herein, Pfizer reserves all rights to argue these issues in connection with any discovery disputes that may arise in connection with this proceeding or any other action.

*[Conclusion and signature pages follow.]*

**Conclusion**

WHEREFORE, Pfizer requests that the Court (i) amend the Mediation Order by entering

the Proposed Order substantially in the form attached hereto and (ii) grant such further relief as

the Court deems just and proper.

Dated: January 5, 2024                              Respectfully submitted,


_By: /s/ Charles A. Beckham, Jr._
**HAYNES AND BOONE, LLP**
Charles A. Beckham, Jr. (TX Bar No. 02016600)
Arsalan Muhammad (TX Bar No. 24074771)
1221 McKinney Street, Suite 4000
Houston, TX 77010
Telephone: 713.547.2000
Email: charles.beckham@haynesboone.com
Email: arsalan.muhammad@haynesboone.com

-and-

Martha Wyrick (TX Bar No. 24101606)
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
Telephone: 214.651.5000
Email: martha.wyrick@haynesboone.com

**SIMPSON THACHER & BARTLETT LLP**
Lynn K. Neuner (admitted _pro hac vice_)
Michael H. Torkin (admitted _pro hac vice_)
George S. Wang (admitted _pro hac vice_)
Anthony C. Piccirillo (admitted _pro hac vice_)
Jamie J. Fell (admitted _pro hac vice_)
425 Lexington Avenue
New York, NY 10017
Telephone: 212.455.2000
Email: lneuner@stblaw.com
Email: michael.torkin@stblaw.com
Email: gwang@stblaw.com
Email: anthony.piccirillo@stblaw.com
Email: jamie.fell@stblaw.com

_Counsel to Pfizer Inc._

**<u>Certificate of Service</u>**

I certify that on January 5, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Charles A. Beckham, Jr.*
Charles A. Beckham, Jr.