IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---------------------------------------------------------- x
: 
In re: : Chapter 11
: 
BARRETTS MINERALS INC., *et al.*[1] : Case No. 23-90794 (MI)
: 
Debtors. : (Jointly Administered)
: 
---------------------------------------------------------- x

**DECLARATION OF LEON SZLEZINGER
IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO ENTER INTO
POST-PETITION FINANCING AGREEMENT AND OBTAIN POST-PETITION
FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY
CODE, (II) AUTHORIZING DEBTORS TO ENTER INTO SECOND AMENDMENT
TO SHARED SERVICES AGREEMENT AND (III) GRANTING RELATED RELIEF**

Under 28 U.S.C. § 1764, I, Leon Szlezinger, declare as follows under the penalty of perjury:

1. I am a Managing Director and Joint Global Head of Debt Advisory & Restructuring at Jefferies LLC ("**Jefferies**"), a global investment banking and financial advisory firm with its principal offices at 520 Madison Avenue, New York, New York 10022. Jefferies has been retained to provide certain investment banking services to Barretts Minerals Inc. ("**BMI**" and together with its debtor affiliate Barretts Ventures Texas LLC, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

2. I submit this declaration (this "**Declaration**") in support of the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing Debtors to Enter Into Post-Petition Financing*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Barretts Minerals Inc. (8715) and Barretts Ventures Texas LLC (0787). The Debtors' address is 5605 North MacArthur Boulevard, Suite 1000, PMB 139, Irving, Texas 75038.

US-DOCS\149046796

*Agreement and Obtain Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing Debtors to Enter Into Second Amendment to Shared Services Agreement and (III) Granting Related Relief* (the "**Motion**")[2] seeking authority to, among other things, enter into the Debtor-in-Possession Credit Agreement (the "**DIP Credit Agreement**").

3. Since joining Jefferies in January 2009, I have advised on numerous complex restructurings, including chapter 11 cases in the mining industry, such as Cambrian Coal, Mission Coal, Foresight Energy, Peabody Energy, Arch Coal, Alpha Natural Resources, Patriot Coal, Westmoreland, and other industries, including SAS AB, Avianca, Clovis Oncology, Endo International, Mallinckrodt, Purdue Pharma, Teligent, iHeartMedia and Westinghouse.

4. Prior to Jefferies, I was a Senior Managing Director at Mesirow Financial Consulting, specializing in Restructuring Advisory Services, and prior to that, I was a partner at KPMG LLP and PricewaterhouseCoopers LLP specializing in Financial Advisory Services.[3]

5. Jefferies has been engaged by BMI since January 2023. Since that time, I, along with my colleagues, have worked closely with BMI and its other professionals and advisors to analyze and familiarize ourselves with the Debtors' day-to-day operations, business affairs, financial performance, and restructuring efforts, and to explore various proposed strategic transactions. As described in the Szlezinger DIP Motion Declaration, we also were directly engaged in marketing debtor-in-possession financing for the Debtors in connection with the Chapter 11 Cases, including negotiating the JMB DIP (as defined below) with the Initial DIP Lender (as defined below).

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3] Additional information regarding Jefferies can be found in the *Declaration of Leon Szlezinger in Support of Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to (I) Obtain Senior Secured Superpriority Postpetition Financing and (II) Use Cash Collateral; (B) Granting Liens and Providing Claims with Superpriority Administrative Expense Status; (C) Modifying the Automatic Stay; (D) Scheduling a Final Hearing; and (E) Granting Related Relief* [Docket No. 15] (the "**Szlezinger DIP Motion Declaration**").

2

6. I am not being specifically compensated for this testimony other than through payments received by Jefferies as a professional retained by the Debtors. I am over the age of 18 years and authorized to submit this Declaration in support of the Motion.

7. Except as otherwise indicated, all statements set forth in this Declaration are based upon: (a) my personal knowledge of the Debtors' operations, financial affairs, and restructuring initiatives, (b) my review of relevant documents, (c) information provided to me by Jefferies employees working under my supervision, (d) information provided to me by, or in discussions with, the Debtors' management team and/or the Debtors' other advisors, and (e) my views based upon my experience and knowledge as a restructuring professional.

## The Chapter 11 Cases

8. As described in detail in the Szlezinger DIP Motion Declaration, the Debtors sought proposals from numerous potential lenders for debtor-in-possession financing prior to the Petition Date in order to fund the Chapter 11 Cases pending consummation of a sale of all or substantially all of BMI's mining-related assets (the "**Sale**"). As part of this process, the Debtors solicited proposals for debtor-in-possession financing either on (a) an unsecured, administrative claim basis or (b) a secured basis. After discussions with potential lenders it was apparent that financing could only be obtained on a superpriority secured basis.

9. After receiving proposals for debtor-in-possession financing, the Debtors negotiated and ultimately entered into a $30,000,000 postpetition financing facility (the "**JMB DIP**") with JMB Capital Partners Lending, LLC, a third-party lender (the "**Initial DIP Lender**" or "**JMB**"). On December 18, 2023, the Court entered the Final JMB DIP Order approving the Debtors' entry into the JMB DIP [Docket No. 67]. Subsequent to entry of the Final JMB DIP Order, the Debtors and the Initial DIP Lender reached an agreement to amend certain provisions

of the JMB DIP Credit Agreement, including extending milestones applicable to the JMB DIP (the "**DIP Amendment**"). On February 8, 2024, the Court entered an order approving the DIP Amendment [Docket No. 612].

10. On April 29, 2024, all of BMI's mining-related assets were sold to Elevation NewCo, LLC pursuant to the *Order (I) Authorizing (A) the Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests and (B) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (II) Granting Related Relief* (the "**Sale Order**") [Docket No. 776]. Proceeds from the Sale (the "**Sale Proceeds**") were used, in part, to fully pay off the JMB DIP.

### The Debtors' Efforts to Explore DIP Financing Alternatives

11. While the Debtors, with the advice and assistance of the Debtors' advisors, successfully consummated the Sale, the Debtors believe that it is unlikely that the Sale Proceeds will provide sufficient liquidity to fund the Chapter 11 Cases to a conclusion. Consequently, the Debtors explored additional financing alternatives.

12. As discussed above and in the *Declaration of Leon Szlezinger in Support of Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Enter Into an Amendment to the DIP Credit Agreement, (II) Supplementing the Final DIP Order in Connection Therewith, and (III) Granting Related Relief* [Docket No. 603] (the "**First Amendment Declaration**"), and based on Jefferies' marketing efforts, I believe that a third-party lender would be unlikely to provide financing in the requisite amount.

13. In contemplation of the need for additional financing post-Sale, Jefferies contacted a number of potential third-party lenders to determine whether financing, on a secured or unsecured basis, was an option. Towards the end of January, after bids related to the Sale were

received, Jefferies contacted seven lenders that had expressed an interest in providing a term loan as part of the initial debtor-in-possession financing marketing process. These seven lenders were unwilling to consider financing (either secured or unsecured) without a guarantee or other form of credit support from the Debtors' ultimate parent entity, Mineral Technologies Inc. ("**MTI**"). Based on discussions with MTI and its advisors, I understand that MTI is unwilling to provide such credit support, and that MTI is under no obligation to do so. After entry of the Sale Order, Jefferies also engaged with Pfizer Inc. and JMB regarding potential financing for the Chapter 11 Cases. Pfizer Inc. declined to participate and JMB similarly conditioned its participation on credit support from MTI. Notwithstanding the foregoing, based on my experience, as a result of the Sale, which left the Debtors with no operating assets (aside from cash and certain real property investments),[4] I also believe that a third-party lender would be unwilling to provide secured financing in the requisite amount.

## The New DIP

14. Given the Debtors' need for additional liquidity and inability to find a willing third-party lender, the Debtors' advisors reached out to MTI to discuss parent financing. After discussions between the Debtors' advisors and the Lender's advisors, the parties ultimately reached an agreement on the terms of a multiple draw term loan facility with Minerals Technologies Investments LLC, a wholly-owned subsidiary of MTI (the "**Lender**") that will provide BMI with up to $30 million (the "**New DIP**"). The New DIP is an unsecured facility, has no financing fees, no undrawn line fee, and only requires that interest is paid in cash at maturity.

---

[4] *See Declaration of David J. Gordon, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 13].

Ultimately, the New DIP provides access to additional liquidity on terms that are unattainable from a third-party for the reasons set forth herein.

15. BMI and the Lender, with the assistance of their respective advisors, engaged in arm's-length, good-faith negotiations around the terms of the New DIP. I was directly involved in these negotiations. As part of my involvement, I had discussions and meetings with the Debtors and their management and other advisors regarding potential alternative financing options (including negotiations with the Lender's advisors regarding the feasibility of a capital contribution from MTI and whether MTI would be willing to guarantee a third-party debtor-in-possession facility), the terms of the New DIP, and the quantum of capital needed.

16. In light of the terms of the New DIP, coupled with the Debtors' prepetition DIP marketing process and the process that the Debtors went through to try to locate an alternative funding source in anticipation of, and subsequent to, entry of the Sale Order, I do not believe that better terms are attainable. Based on my involvement in the negotiations with the Lender and my experience generally, I believe that the terms of the New DIP are fair and reasonable under the circumstances of these Chapter 11 Cases.

17. I do not believe that the Debtors could secure financing on as favorable or better terms from any other lender. The New DIP is an unsecured loan to an entity that has a diminishing amount of cash on hand and, post-Sale, limited revenue generating ability. Moreover, there are no fees associated with the New DIP and the interest is only payable in cash at maturity. Based on Jefferies' efforts to secure financing for the Debtors and my experience in raising DIP financing, I believe that the New DIP is the best available financing given the circumstances to fund the Chapter 11 Cases.

**Conclusion**

18. As described herein, it is my belief that the New DIP represents the best financing option currently available to the Debtors to provide the Debtors additional liquidity to administer the Chapter 11 Cases for the benefit of the estates.

[*Remainder of Page Intentionally Blank*]

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of May 2024.

/s/ Leon Szlezinger
Leon Szlezinger
Managing Director and Joint Global
Head of Debt Advisory &
Restructuring at Jefferies LLC