IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------- x
: 
In re: : Chapter 11
:
BARRETTS MINERALS INC., *et al.*[1] : Case No. 23-90794 (MI)
:
Debtors. : (Jointly Administered)
:
------------------------------------------------------- x

**DECLARATION OF WILLIAM MURPHY
IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO ENTER INTO
POST-PETITION FINANCING AGREEMENT AND OBTAIN POST-PETITION
FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE,
(II) AUTHORIZING DEBTORS TO ENTER INTO SECOND AMENDMENT TO
SHARED SERVICES AGREEMENT AND (III) GRANTING RELATED RELIEF**

Under 28 U.S.C. § 1764, I, William Murphy, declare as follows under the penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Senior Director at M3 Advisory Partners, LP ("**M3**"), which has its principal offices at 1700 Broadway, 19th Floor, New York, New York 10019. M3 is the financial advisor to Barretts Minerals Inc. ("**BMI**" and together with its debtor affiliate Barretts Ventures Texas LLC, the "**Debtors**") in the above-captioned chapter 11 case (the "**Chapter 11 Cases**").

2. I submit this declaration (this "**Declaration**") in support of the *Debtors' Emergency Motion for Entry an Order (I) Authorizing Debtors to Enter into Post-Petition Financing Agreement and Obtain Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing Debtors to Enter Into Second Amendment to Shared Services Agreement and (III)*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Barretts Minerals Inc. (8715) and Barretts Ventures Texas LLC (0787). The Debtors' address is 5605 North MacArthur Boulevard, Suite 1000, PMB 139, Irving, Texas 75038.

*Granting Related Relief* (the "**DIP Motion**")[2] seeking authority to, among other things, enter into the Debtor-in-Possession Credit Agreement (the "**DIP Credit Agreement**").

3. I have more than 40 years of professional experience in the finance industry, including more than 30 years of experience in corporate restructuring. In my current role at M3, I advise troubled companies, their creditors and other economic stakeholders in both chapter 11 and out-of-court workouts. My expertise includes serving as interim management for financially distressed companies and advising the management or creditors of such companies with respect to strategic, planning, corporate viability, business plan alternatives, financial projections and debt restructuring.

4. M3 was retained on June 14, 2023, to provide financial advisory services to BMI in connection with the assessment of certain strategic alternatives to address BMI's talc liabilities. I, along with my colleagues, have worked closely with BMI's management and other professionals and advisors to analyze and familiarize ourselves with the Debtors' day-to-day operations, business affairs, financial performance, books and records, and liquidity and cash needs. In particular, I am one of the principal advisors working with the Debtors, and have worked closely with the Debtors' management in connection with the proposed New DIP.

5. I am not being specifically compensated for this testimony other than through payments received by M3 as a professional retained by the Debtors. I am over the age of 18 years and authorized to submit this Declaration in support of the DIP Motion.

6. Except as otherwise indicated, all statements set forth in this Declaration are based upon (a) my personal knowledge of the Debtors' operations, financial affairs, and restructuring initiatives, (b) my review of relevant documents, (c) information provided to me by M3 employees

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the DIP Motion.

2

working under my supervision, (d) information provided to me by, or in discussions with, the Debtors' management team and/or the Debtors' other advisors, and (e) my views based upon my experience and knowledge as a restructuring professional.

### The Debtors' Need for DIP Financing

7. On April 29, 2024, all of BMI's mining related assets were sold to Elevation NewCo, LLC pursuant to the *Order (I) Authorizing (A) the Sale of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests and (B) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (II) Granting Related Relief* [Docket No. 776] (the "**Sale**"). Proceeds from the Sale (the "**Sale Proceeds**") were used to fully satisfy amounts due under the Debtors' $30,000,000 debtor-in-possession financing facility with JMB Capital Partners Lending, LLC (the "**JMB DIP**") and are currently being used to fund the Chapter 11 Cases.

8. Although the Sale Proceeds provide the Debtors with liquidity in the near term, the Debtors require additional access to cash to ensure that the Debtors are able to satisfy the administrative costs and expenses incurred in the Chapter 11 Cases. Without access to the proposed DIP Loans, I believe the Debtors will have insufficient liquidity to progress towards a consensual resolution of the Chapter 11 Cases. Indeed, the Debtors may have insufficient cash to fund the Chapter 11 Cases after May 2024. Accordingly, if approved, the proposed New DIP will provide critical funding to the Debtors.

### The Approved Budget

9. BMI and its management, with the assistance of M3 and their other advisors, reviewed and analyzed the Debtors' near-term weekly and long-term cash flows forecasts. These forecasts consider a number of factors, including, but not limited to, (a) the effect of the Sale on

the operations of the Debtors' businesses, (b) interest associated with postpetition financing, (c) professional fees, and (d) the expected fess associated with administration of the Chapter 11 Cases.

10. BMI and its advisors developed and ultimately negotiated the Approved Budget with the Lender, a copy of which is attached to the DIP Credit Agreement as **Exhibit B**. The Approved Budget contains line items for categories of cash receipts, and necessary disbursements and expenditures expected to be incurred or made, during the relevant period in the Approved Budget. The Approved Budget has been updated to reflect the current status of the Chapter 11 Cases – *e.g.*, continued mediation with the Unsecured Creditors Committee and the FCR, potential litigation between the Debtors and parties in interest, post-Sale activities, and efforts to confirm a chapter 11 plan. Taken together, the Debtors require funding beyond the aggregate commitments contemplated under the JMB DIP. The Debtors believe the Approved Budget accurately reflects the Debtors' funding requirements and contains all the reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of the administration of the Chapter 11 Cases through September 30, 2024, which is the estimated date of plan confirmation. For these reasons, I believe the Approved Budget is reasonable and appropriate under the circumstances.

11. As reflected in the Approved Budget, I do not believe the Debtors generated sufficient liquidity from the Sale Proceeds to meet their financial obligations (when taking into account the projected costs of the Chapter 11 Cases) as they come due. As the Approved Budget reveals, the Debtors expect at least $30,000,000 in additional funding (plus $458,000 for the capitalized interest under the New DIP) is required to confirm a chapter 11 plan. Current cash amounts are insufficient to satisfy the Debtors' upcoming costs and expenses. Therefore, without the relief sought in the DIP Motion, the Debtors would be unable to pay their necessary

administrative expenses required to resolve the Chapter 11 Cases, which would derail the Debtors' reorganization efforts.

13.      On the other hand, I believe, and as reflected on the Approved Budget, with access to the proposed DIP Facility and the funding thereunder, the Debtors will have sufficient liquidity to pay their expenses as they come due, while pursuing a consensual resolution of the Chapter 11 Cases. To the extent a consensual resolution is unattainable, the Debtors may require additional funding to litigate the validity of the talc claims asserted against them. However, the Debtors remain hopeful that the Chapter 11 Cases can be expeditiously resolved.

## Conclusion

13.      For all the reasons stated above, I believe that the DIP Facility is in the best interests of the Debtors' estates, is appropriately sized to enable the Debtors to meet their obligations, and is a sound exercise of the Debtors' business judgment.

*[Remainder of page intentionally left blank]*

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of May, 2024.

/s/ *William Murphy*
William Murphy
Senior Director
M3 Advisory Partners, LP