**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

```
-------------------------------------------------- x
                                                   :   Chapter 11
In re:                                             :
                                                   :   Case No. 23-90794 (MI)
BMI OLDCO INC., et al.,1                            :
                                                   :   (Jointly Administered)
          Debtors.                                 :
                                                   :   Obj. Deadline March 31, 2025 at 5:00 pm (Central
-------------------------------------------------- x   Time)
```

**AMENDED JOINT STIPULATION AND AGREED ORDER APPOINTING
MEDIATOR AND GOVERNING MEDIATION PROCEDURES
[Relates to Docket Nos. 1330 & 1331]**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") and Minerals Technologies Inc. ("**MTI**"), on behalf of itself and its subsidiaries excluding the Debtors (collectively, the "**Non-Debtor Affiliates**" and together with the Debtors, each, a "**Mediation Party**," and collectively, the "**Mediation Parties**") hereby enter into this stipulation and agreed order (this "**Stipulation**") and agree as follows:

**RECITALS**

A.      WHEREAS, on October 2, 2023 (the "**Petition Date**"), the Debtors commenced these chapter 11 cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**").  On the Petition Date, the Court entered an order authorizing the joint administration and procedural consolidation of the Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: BMI Oldco Inc. (f/k/a Barretts Minerals Inc.) ("**BMI**") (8715) and Barretts Ventures Texas LLC (0787). The Debtors' address is 5605 North MacArthur Boulevard, Suite 1000, Irving, Texas 75038.

(the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**") [Docket No. 23].  The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On October 20, 2023, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") [Docket No. 138] in the Chapter 11 Cases.  On November 20, 2023, the Court entered an order [Docket No. 307] appointing the future claimants' representative (the "**FCR**") pursuant to sections 105(a), 524(g)(4)(B)(i) and 1109(b) of the Bankruptcy Code.  As of the date hereof, no trustee or examiner has been requested in the Chapter 11 Cases;

B.     WHEREAS the Debtors and certain of the Non-Debtor Affiliates are defendants in numerous lawsuits claiming that their personal injuries were caused by exposure to talc allegedly contaminated with asbestos that was mined, beneficiated, processed, and sold by Debtor BMI;

C.     WHEREAS the Debtors seek to comprehensively resolve BMI's talc liabilities through the confirmation of a plan of reorganization (the "**Plan**") pursuant to sections 524(g) and 1129 of the Bankruptcy Code that creates a section 524(g) trust (the "**524(g) Trust**");

D.     WHEREAS the Debtors, MTI, the Creditors' Committee, and the FCR have been engaged in ongoing mediation (the "**UCC/FCR Mediation**") regarding various issues relating to BMI's historic talc liabilities; and

E.     WHEREAS the Debtors and the Non-Debtor Affiliates have each agreed to engage in separate negotiations from the UCC/FCR Mediation to attempt to reach a resolution of any and all issues in conjunction with a potential Plan and 524(g) Trust, including, but not limited to, (a) claims and causes of action of the Debtors against the Non-Debtor Affiliates; (b) claims and

2

causes of action of the Non-Debtor Affiliates against the Debtors; and (c) any other matters agreed to among the Mediation Parties or as otherwise directed by further order of the Court (the "**Plan Mediation Topics**");

## ORDER

NOW, THEREFORE**,** in consideration of the foregoing recitals, which are incorporated into this order (this "**Order**"), the Court hereby orders as follows:

1.     The Court authorizes and appoints Kenneth Feinberg to serve as mediator (the "**Mediator**") in the Chapter 11 Cases and to conduct the mediation as set forth herein (the "**Mediation**").

2.     The Mediation Parties in respect of the Plan Mediation Topics shall be: (a) the Debtors, (b) MTI, on behalf of itself and the other Non-Debtor Affiliates, and (c) any other parties the Mediator and/or the Mediation Parties agree in the future should participate in the mediation process, including, but not limited to, the Creditors' Committee and FCR *provided however*, that no party shall be compelled to participate as a Mediation Party if it elects not to do so.

3.     While separate from the UCC/FCR Mediation, the Mediation is a continuation of the efforts undertaken by the Debtors and MTI during the UCC/FCR Mediation and may continue to a date mutually agreed by the Mediation Parties and the Mediator or as approved by the Court.

4.     Kenneth Feinberg shall be paid a flat monthly fee of $200,000, which monthly fees shall be inclusive of all of the Mediator's fees and costs, including for time spent attending and preparing for mediation sessions and the expenses of any retained professionals.  Payment of fees and expenses in excess of these amounts shall require further approval of this Court.

5.     The Mediator's fees and reasonable and necessary expenses shall be borne equally by the Debtors and MTI.  For the avoidance of doubt, the Mediator shall  not be required to file a fee application or seek further approval from this Court for payment of fees and expenses from the

3

Debtors' estates contemplated herein.  Subject to entry of this Order, the Debtors are authorized to pay the fees and expenses of the Mediator and any employees or professional staff thereof without further application of the Court.

6.      The Mediation is subject to the Procedures for Complex Cases in the Southern District of Texas (Effective August 1, 2021).  For the avoidance of doubt, to the extent any part of this Stipulation shall conflict with the Procedures for Complex Cases in the Southern District of Texas, the terms and provisions of this Stipulation shall govern.

7.      The Mediation Parties shall engage in good-faith efforts to agree to the scope of information to be shared for the purposes of Mediation ("**Discovery**"), subject to additional requests from the Mediator.  Once in Mediation, in the event of a dispute over the scope of additional Discovery to be shared, the Mediation Parties shall submit their own proposed scope of information requests to the Mediator and the Mediator shall determine the scope of Discovery. Nothing in this Order shall limit the ability of any Party to engage in Rule 2004 discovery or other discovery in or with respect to the Chapter 11 Cases or any related proceeding; *provided* that before any Mediation Party seeks formal discovery, it will issue its discovery request first through the Mediator and, in the event of a dispute, all Mediation Parties' rights are reserved to seek and contest formal discovery in respect of such disputed matter.

8.      The Mediation Parties acknowledge that the Mediator may have *ex parte* communications with other Mediation Parties during the course of the Mediation.

9.      The Mediator may conduct the Mediation as he sees fit, establish rules of the Mediation, and consider and take appropriate action with respect to any matters the Mediator deems appropriate in order to conduct the Mediation, subject to the terms of this Order.

10.     Kenneth Feinberg shall control all procedural aspects of the Mediation related to the Plan Mediation Topics, including, without limitation:  (a) setting dates, times, and places for conducting sessions of the Mediation; (b) requiring the submission of mediation statements; (c) requiring the attendance of representatives of any party with sufficient authority to negotiate and settle the disputed issues and amounts relevant to the applicable Mediation session; (d) designing and conducting the Mediation sessions; and (e) establishing a deadline for the parties to act upon any settlement proposal.  The Mediator shall consult with all the Mediation Parties regarding all such matters, including the timing, general content, and manner of any submissions to the Mediator.

11.     The Mediator, in his sole discretion, may determine whether decision makers for Mediation Parties are required to attend any Mediation sessions.  The Mediator shall provide reasonable notice of the date of the mediation session and preferred attendance method.  The Mediation Parties are responsible for determining which of their representatives will attend any particular mediation session.

12.     The results of the Mediation will be non-binding upon the Mediation Parties, except to the extent that a Mediation Party agrees in writing to be bound by a settlement reached at Mediation.  Any resolution that is reached at the Mediation and that involves the Debtors or their estates shall be subject to Court approval after notice and opportunity for hearing, to the extent required under Bankruptcy Rule 9019 (which can be the Plan and the confirmation hearing).

13.     Each of the Mediation Parties and their client representatives will participate in the Mediation in good faith.

14.     Notwithstanding any other terms of this Order: (a) the Mediator is authorized to submit general statements to this Court as to the status of the Mediation, including: (i) which

Mediation Parties have attended; (ii) whether Mediation Parties are engaging in good faith; and (iii) whether Mediation has reached an impasse; and (b) the Mediator may testify in any proceeding to enforce the terms of any written agreement reached by the Mediation Parties resulting from the Mediation wherein the meaning or content of such agreement is put in issue or that the Mediation resulted in no written agreements and has concluded.

15.     There shall be an absolute mediation privilege, subject to further order by the Court in accordance with the fourth sentence of this paragraph.  All communications, information, and evidence exchanged within the Mediation, including, (a) discussions among the Mediation Parties, including discussions with or in the presence of the Mediator before or after the entry into this Stipulation, (b) any Mediation statements or any other documents or information provided to the Mediator or exchanged among the Mediation Parties in the course of the Mediation, and (c) correspondence, draft resolutions, offers, and counteroffers produced for, or as a result of, or during the Mediation, shall be strictly confidential and shall remain confidential following the Mediation's conclusion, and shall not be used for any purpose other than the Mediation. To the extent any information or evidence disclosed within the course of Mediation is privileged, its disclosure amongst the Mediation Parties in the Mediation and to the Mediator does not waive or adversely affect the privileged nature of such information or evidence.  No person or Mediation Party, including counsel for any Mediation Party, or any other party, shall in any way disclose to any person or entity that is not a Mediation Party or to any court, including, without limitation, in any pleading or other submission to any court, any such discussion, Mediation statement, correspondence, resolution, offer, or counteroffer that may be made or provided in connection with the Mediation, unless authorized by further order of this Court.  All settlement proposals, counterproposals, and offers of compromise made during the Mediation (each, a "**Settlement**

**Proposal**") shall (a) remain confidential unless the Mediation Party making such Settlement Proposal agrees to the disclosure of any such Settlement Proposal and (b) be subject to protection under Rule 408 of the Federal Rules of Evidence and all state-law equivalents.  Any Mediation Party who improperly discloses communications, information, and evidence exchanged confidentially during the Mediation may be subject to sanctions.

16.     No stenographic or official written record, transcript, or notes of any discussion during the Mediation shall be kept by any Mediation Party or the Mediator, absent express written agreement by all the Mediation Parties; *provided* that each Mediation Party is authorized and not prohibited in any manner from taking and maintaining notes of the Mediation for its own use or as otherwise permitted by this Order.

17.     The *Order Approving Stipulated Protective Order to be entered in the Chapter 11 Cases* (the "**Protective Order**"), any other protective order entered in the Chapter 11 Cases, or any related adversary proceedings, and any confidentiality agreement or similar agreement executed (or agreed to via email) with the Debtors, as the case may be, shall govern the Mediation Parties' production, review, disclosure and handling of Confidential Information (as defined in the Protective Order) in connection with the Mediation.

18.     Any Mediation Party may provide documents and/or information to the Mediator that are subject to a privilege or other protection from discovery, including, without limitation, the attorney-client privilege, the work product doctrine, or any other privilege, right, or immunity the Mediation Parties may be entitled to claim or invoke (the "**Privileged Information**"). The Mediation Party producing such documents and/or information to the Mediator (the "**Producing Party**") must designate such documents and/or information as "Privileged Information." By providing Privileged Information solely to the Mediator and no other Mediation Party, no

7

Mediation Party nor its respective professionals intend to, or shall, waive, in whole or in part, the attorney-client privilege, the work-product doctrine, the mediation privilege or any other privilege, right or immunity they may be entitled to claim or invoke with respect to such Privileged Information and all other Mediation Parties are estopped from arguing that disclosure to the Mediator waived any such privilege, doctrine, right, or immunity. The Mediator shall not provide Privileged Information or disclose the contents thereof to any other person, entity, or Mediation Party without the consent of the Producing Party (except that the Mediator may disclose Privileged Information to any person assisting the Mediator in the performance of their Mediation duties, in which event such assistant shall be subject to the same restrictions as the Mediator with respect to such Privileged Information).  No Mediation Party is obligated to provide Privileged Information to the Mediator.

19.     To the extent that any Mediation Party is in possession of privileged or confidential information provided to such Mediation Party pursuant to the terms and conditions of the Protective Order, any confidentiality agreement, or other similar agreement, executed (or agreed to via email) in these Chapter 11 Cases, or another order of this Court entered in connection with these Chapter 11 Cases, such information may be disclosed to the Mediator, but shall otherwise remain privileged and/or confidential and shall not be disclosed to any other Mediation Party; *provided, however*, that confidential, but not privileged, information may be disclosed to another Mediation Party that is also subject to the Protective Order, a confidentiality agreement, other similar agreement, or subject to such Court order, as applicable.  the Protective Order, any confidentiality agreement, or other similar agreement, executed (or agreed to via email) in these Chapter 11 Cases, or another order of this Court entered in connection with these Chapter 11 Cases

shall govern the Mediation Parties' production, review, disclosure, and handling of privileged or confidential information in connection with the Mediation.

20.     The rights and arguments of all Mediation Parties and other parties-in-interest with respect to the discoverability or admissibility of documents exchanged in connection with the Mediation are expressly preserved and nothing in this Order precludes any party from obtaining discovery of documents that would otherwise be discoverable, after considering any applicable privileges or protections, regardless of the sharing of such documents in the Mediation. Information previously disclosed or known to a Mediation Party or otherwise developed by a Mediation Party prior to the Mediation shall not be rendered confidential, inadmissible, or not discoverable solely as a result of its use in the Mediation, and nothing herein shall prevent a Mediation Party from disclosing or otherwise: (a) presenting its own arguments or positions (independent of what was shared by or with that Mediation Party in the Mediation) with respect to any issue; (b) using its own documents and work product developed independently by it without reliance on information shared with such Mediation Party in the Mediation; or (c) using documents that were not prepared by another Mediation Party or the Mediator for the purposes of Mediation in any proceeding solely because such documents were also used in whole or in part or such issues were discussed during the Mediation.

21.     Notwithstanding the foregoing, but subject to paragraph 7 above, this Stipulation does not require any Mediation Party to submit a dispute as to any matter to the Mediator before filing a pleading with the Court.

22.     All rights of the Mediation Parties are preserved and shall not be prejudiced by participation in the Mediation, including, without limitation, any rights to:  (a) have final orders in non-core matters entered only after a *de novo* review by a District Court Judge; (b) seek withdrawal

of the reference of any matter subject to mandatory or discretionary withdrawal; (c) seek removal of any matter; (d) seek remand of any removed matter; (e) seek a transfer of venue of any removed matter; (f) oppose venue transfer of any removed matter; (g) demand arbitration or a jury trial in any proceeding; and (h) contest the jurisdiction of the Court to enter any order concerning any matter.

23.     Notwithstanding any provision of this Stipulation to the contrary, nothing contained in this Stipulation shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying the Mediation Parties' rights or obligations under any contract providing indemnification that is the subject of the Mediation or otherwise.

24.     Each of the Mediation Parties to this Stipulation represents and warrants it is duly authorized to enter into and be bound by this Stipulation and to agree to the terms of this Order.

25.     Additional parties may join this Stipulation either by filing a notice of joinder hereto upon receiving the written consent of each Mediation Party or by otherwise agreeing in writing to be bound by the Stipulation.

26.     The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

27.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

28.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

 Dated: _____, 2025

                                                          _____
                                                          MARVIN ISGUR
                                                          UNITED STATES BANKRUPTCY JUDGE

**STIPULATED AND AGREED TO THIS 25th DAY OF MARCH, 2025**

*/s/ John F. Higgins*
_____
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
Megan Young-John (TX Bar No. 24088700)
Bryan L. Rochelle (TX Bar No. 24107979)
James A. Keefe (TX Bar No. 24122842)
1000 Main Street, 36th Floor
Houston, TX 77002
Telephone: (713) 226-6000
Email: jhiggins@porterhedges.com
        myoung-john@porterhedges.com
        brochelle@porterhedges.com
        jkeefe@porterhedges.com

-and-

**LATHAM & WATKINS LLP**
Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
Amy Quartarolo (admitted *pro hac vice*)
Christina Craige (admitted *pro hac vice*)
Shawn P. Hansen (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Email: jeff.bjork@lw.com
        kim.posin@lw.com
        amy.quartarolo@lw.com
        chris.craige@lw.com
        shawn.hansen@lw.com

*Counsel to the Debtors and Debtors in Possession*

*[Signature Page to Mediation Stipulation and Agreed Order]*

*/s/ Erin Diers*
_____

**HUGHES HUBBARD & REED LLP**
Christopher K. Kiplok (admitted *pro hac vice*)
Erin Diers (admitted *pro hac vice*)
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Email:  christopher.kiplok@hugheshubbard.com
         erin.diers@hugheshubbard.com

*Counsel to Minerals Technologies Inc.*