IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

```
------------------------------------------------------- x
                                                        :   Chapter 11
In re:                                                  :
                                                        :   Case No. 23-90794 (MI)
BMI OLDCO INC., et al.,¹                                :
                                                        :   (Jointly Administered)
                 Debtors.                               :
                                                        :
------------------------------------------------------- X
```

**DEBTORS' FIRST STATUS REPORT[2]**
[Related to Docket No. 1408]

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby file this status report (this "**Status Report**") regarding certain matters raised during the hearing on April 14, 2025 and April 15, 2025 (the "**Hearing**"). The Debtors respectfully state as follows:

**Debtors' Existing Governance**

1. Prior to the Petition Date, the Debtors' Board of Directors (the "**Board**") consisted of D.J. Monagle, III, Arnaud Wisnia and Kevin Collins. Mr. Collins was appointed to the Board in July 2023 as an independent director. In April 2023, prior to the commencement of the chapter 11 cases (the "**Chapter 11 Cases**"), the Board appointed David J. Gordon as its chief restructuring officer (the "**CRO**") to manage the Debtors' businesses and oversee the Chapter 11 Cases. As the CRO, Mr. Gordon currently reports to the Board.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: BMI Oldco Inc. (f/k/a Barretts Minerals Inc.) (8715) ("**BMI**") and Barretts Ventures Texas LLC (0787). The Debtors' address is 5605 North MacArthur Boulevard, Suite 1000, PMB 139, Irving, Texas 75038.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Declaration of David J. Gordon, Chief Restructuring Officer of the Debtors, In Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 13].

1

2. Following the commencement of the Chapter 11 Cases, the Board established a special committee (the "**Special Committee**") vested with the exclusive power and authority to, among other things, oversee and direct the investigation, pursuit and any settlement of estate causes of action against the Debtors' non-Debtor affiliates (the "**Non-Debtor Affiliates**"). The Special Committee currently consists of one director, Kevin Collins, who has overseen the ongoing investigation of potential estate causes of action against the Non-Debtor Affiliates. In September 2024, the Special Committee engaged Porter Hedges LLP as counsel.

## Debtors' Revised Governance Protocol

3. Although the Debtors believe that their governance has always been appropriate, in response to the concerns expressed by the Court at the Hearing, the Debtors will modify their existing governance structure and create an ongoing obligation to provide further reporting about, among other things, the Special Committee's investigation and pursuit of estate causes of action to the Court, the Official Committee of Unsecured Creditors (the "**Committee**"), the legal representative for future claimants against the Debtors (the "**FCR**"), and other parties in interest. The foregoing is referred to as the "**Governance Protocol**" and is attached as **Exhibit 1**.[3]

4. The Governance Protocol, among other things, reconstitutes the Board and the Special Committee to ensure even greater independence, objectivity, and transparency in the Special Committee's oversight and direction of the Chapter 11 Cases. The Debtors are also cognizant of the Court's concern regarding adversity with respect to the Debtors' direct parent, Specialty Minerals Inc. ("**SMI**"), and ultimate parent, Minerals Technologies Inc. ("**MTI**"), and that such adversity should be visible to the parties in these Chapter 11 Cases. In an effort to address

---

[3] This Status Report summarizes certain provisions of the Governance Protocol, but the terms of the Governance Protocol shall control in all respects.

2

such concerns, the Governance Protocol also provides the Committee with the opportunity to select a qualified independent director to sit on the Special Committee.[4]

5. As set forth in the Governance Protocol, the Debtors propose to expand the membership of the Board and the Special Committee to include three independent directors: (i) Ret. Judge Robert Drain, (ii) Roger Frankel, and (iii) either a Qualified Director Candidate proposed by the Committee that is acceptable to the CRO and the Board (after the appointment of Ret. Judge Drain and Mr. Frankel) or, if no such candidate is proposed, the Debtors' existing independent director Kevin Collins.

6. The Debtors believe that Ret. Judge Drain and Mr. Frankel have the qualifications necessary to serve as members of the Board and the Special Committee and to carry out the mandate of the Special Committee with full and complete independence and objectivity. In addition, both have represented to the Debtors that they do not have a Conflict and will ensure that a Conflict does not arise during their tenure on the Board and the Special Committee. The curricula vitae of Ret. Judge Robert Drain and Roger Frankel are attached as **Exhibit 2** and **Exhibit 3**, respectively, and the Debtors highlight certain qualifications below:

- Ret. Judge Robert Drain is a former bankruptcy judge of the United States Bankruptcy Court for the Southern District of New York with over 20 years of experience on the bench. During his tenure as a member of the judiciary, Ret. Judge Drain presided over dozens of complex chapter 11 cases. Before retiring from the bench, Judge Drain presided over the ongoing chapter 11 cases of Purdue Pharma L.P.

- Roger Frankel is a restructuring professional with extensive experience serving as a fiduciary for personal injury claimants in mass tort-related bankruptcies,

---

[4] As set forth in the Governance Protocol, a qualified candidate (a "**Qualified Director Candidate**") must have the qualifications reasonably necessary, with respect to experience in the distressed industry and/or in mass tort chapter 11 cases, educational background and integrity, to serve as an independent director on the Board and Special Committee. Additionally, such candidate must not be (i) currently representing any claimant against the Debtors, (ii) a member of a firm (or otherwise affiliated with any firm) currently representing any claimant against the Debtors, or (iii) retained as a consultant by or on behalf of any claimant against the Debtors (any such scenario, a "**Conflict**").

3

including serving as a legal representative for future personal injury claimants in asbestos- and talc-related cases. Notably, Mr. Frankel has been appointed as a legal representative for future claimants in several high-profile mass tort-related cases, including the chapter 11 cases of Cyprus Mines Corporation, Mallinckrodt Plc, TK Holdings, Inc., W.R. Grace & Co., and Combustion Engineering.

7. In addition to the appointment of Ret. Judge Drain and Mr. Frankel, the Debtors request that the Committee propose at least one Qualified Director Candidate by no later than May 5, 2025 (the "**Committee Designee**").[5] If the Committee Designee is acceptable to the CRO and the Board (after the appointment of Ret. Judge Drain and Mr. Frankel) and can certify that he or she does not and will not have a Conflict during his or her tenure on the Board and the Special Committee, then the Debtors will appoint such Qualified Director Candidate to the Board and the Special Committee, and the Special Committee shall comprise Ret. Judge Drain, Mr. Frankel, and the Committee Designee. If the CRO, the Board and the Committee cannot agree on the third independent director candidate by 1 p.m. (CT) on May 9, 2025, then the Debtors will request the assistance of the Court by filing a notice in the Chapter 11 Cases.

8. The reconstituted Special Committee will have a broad mandate to oversee and make material decisions with respect to the Chapter 11 Cases, including, but not limited to, the exclusive power and authority to oversee and direct the investigation and pursuit of estate causes of action. The Special Committee will have the exclusive power and authority to retain its own professionals (including counsel and experts) in the Chapter 11 Cases and all decisions of the Special Committee will be made by majority vote other than the hiring of advisors; the Special Committee's engagement of advisors, including counsel(s) and expert(s) shall be made by unanimous decision, and if a unanimous decision cannot be reached by the independent directors

---

[5] The Debtors selected this date in light of the Court's urging to act expeditiously. This Status Report shall serve as the Debtors' request to the Committee that it send written notification of (i) its proposed Qualified Director Candidate to the Debtors' counsel or (ii) its determination that it has elected not to identify a proposed Qualified Director Candidate, in each case, no later than May 5, 2025 at 4:00 p.m. (CT).

4

on the Special Committee, then the Special Committee shall seek assistance from the Court and shall simultaneously provide notice of such request on the docket in the Chapter 11 Cases.

9. The Debtors understand that MTI and SMI will support the Governance Protocol, and will continue to cooperate in the Special Committee's ongoing investigation.[6]

### Debtors' Proposed Additional Reporting

10. To ensure even greater transparency and communication with the Court, the Committee, the FCR, and other parties in interest, subject to privilege limitations, the Debtors propose to file monthly status reports with the Court regarding the progress of the Chapter 11 Cases, including the status of the Special Committee's investigation with respect to estate causes of action. The Debtors will also file a second status report on May 23, 2025 (the "**Second Status Report**"), which will include, among other things, (i) the advisors retained by the Special Committee and (ii) a schedule for the Special Committee's investigation and pursuit of estate causes of action.

11. In addition, subject to limitations regarding privilege, the Special Committee will consult with the Committee and the FCR regarding the status of its investigation and pursuit of estate causes of action in accordance with the Governance Protocol. The CRO (acting at the direction of the Special Committee) will hold bi-weekly meetings with the Committee and the FCR to provide status updates regarding such matters.

### CRO and Special Committee Access to the Court; Miscellaneous Matters

12. In an effort to ensure full and fair access to the Court, the Governance Protocol provides that the CRO and each member of the Special Committee is authorized to raise any issue

---

[6] *Statement of Non-Debtor Affiliates Regarding (I) Status Report and (II) Response to the April 16, 2025 Case Management Order* [Docket No. 1428], p. 3 ("As part of this, the Non-Debtor Affiliates will continue to fully cooperate in the ongoing, independent investigation of estate claims, including with any revised BMI governance structure that BMI or the Court may constitute.").

with the Court with respect to matters that, in the CRO's or Special Committee member's discretion, ought to be raised with the Court. If the CRO or member(s) of the Special Committee raise any issues with the Court, they will simultaneously provide notice of the same on the docket in the Chapter 11 Cases.

13. The Debtors are committed to addressing the Court's concerns and so as to ensure that the Governance Protocol remains in place through the conclusion of these Chapter 11 Cases, the Governance Protocol provides that the composition of the Board and the Special Committee, as well as all other governance terms set forth in the Governance Protocol, cannot be modified during the Chapter 11 Cases without Court approval and after notice to all parties in the Chapter 11 Cases.

14. The Debtors are prepared to discuss the proposed Governance Protocol at the upcoming status hearing on April 29, 2025 or such other time as requested by the Court. The Debtors will submit a proposed form of order[7] with respect to the Governance Protocol for consideration by the Court.

[*Remainder of page intentionally left blank*]

---

[7] To ensure the Special Committee's ability to act in the sole interests of the Debtors' estates, the proposed form of order will include language obligating the members of the Special Committee to avoid any actions that may impair the Debtors' applicable privileges or, by independent dissemination of any information, enhance the value of any claims against the estates or reduce the value of any estate causes of action.

| | |
|---|---|
| Dated:  April 28, 2025<br>        Houston, Texas | Respectfully Submitted,<br>*/s/ John F. Higgins* |

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
Megan Young-John (TX Bar No. 24088700)
James A. Keefe (TX Bar No. 24122842)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Email: jhiggins@porterhedges.com
myoung-john@porterhedges.com
jkeefe@porterhedges.com

-and-

**LATHAM & WATKINS LLP**
Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
Christina M. Craige (admitted *pro hac vice*)
Deniz A. Irgi (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Email:      jeff.bjork@lw.com
            kim.posin@lw.com
            chris.craige@lw.com
            deniz.irgi@lw.com

*Counsel for Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

      I certify that on April 28, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

      */s/ John F. Higgins*
      John F. Higgins

**<u>Exhibit 1</u>**
Governance Protocol

**BMI OLDCO INC:**
**CORPORATE GOVERNANCE PROTOCOL[1]**

I. **Special Committee Composition**

    a. The BMI board of directors (the "**Board**") to be expanded from three to five directors; the existing Special Committee to be expanded from one independent director to three independent directors.

    b. Ret. Judge Robert Drain and Roger Frankel to be appointed as independent directors to both the Board and the Special Committee.

    c. No later than May 5, 2025, the Debtors request that the Committee propose an independent director candidate with the qualifications reasonably necessary, with respect to experience in the distressed industry and/or in mass tort chapter 11 cases, educational background and integrity, to serve as an independent director on the Board and Special Committee. Such proposed independent director candidate shall not be (i) currently representing any claimant against the Debtors; (ii) a member of a firm (or otherwise affiliated with any firm) currently representing any claimant against the Debtors; or (iii) retained as a consultant by or on behalf of any claimant against the Debtors (any such scenario, a "**Conflict**").

        i. If the Committee does not propose an independent director candidate, the Debtors' existing independent director, Kevin Collins, will remain on the Board and as the third member on the Special Committee.

        ii. If the Committee's proposed independent director candidate (a "**Committee Designee**") is acceptable to the Debtors' CRO and the Board (after the appointment of Ret. Judge Robert Drain and Roger Frankel), then, upon such Committee Designee's certification that he or she has no Conflict and agreement that no Conflict will be permitted to arise during his or her tenure as an independent director, such Committee Designee shall be appointed to the Board and the Special Committee shall comprise Ret. Judge Robert Drain, Robert Frankel, and the Committee Designee.

        iii. If the Debtors' CRO, the Board, and the Committee cannot agree on the third director candidate by no later than 1 p.m. (CT) on May 9, 2025, the Debtors will request the assistance of the Court and shall simultaneously provide notice on the docket in the Chapter 11 Cases.

II. **Special Committee Mandate**

    a. The Special Committee would have full broad authority to make material decisions regarding the Chapter 11 Cases, including, but not limited to, the sole and exclusive authority and power to investigate, prosecute, and/or settle estate causes of action.

        i. The Special Committee will have the exclusive power and authority to retain its own professionals in the Chapter 11 Cases.

---

[1] Capitalized terms used but not defined herein will have the meanings ascribed to them in the Debtors' First Status Report.

1

b. All decisions of the Special Committee will be made by majority vote other than the hiring of advisors; provided, however, that the engagement of advisors, including counsel(s) and expert(s) shall be made by unanimous decision and if a unanimous decision cannot be reached by the independent directors on the Special Committee then the Special Committee shall seek assistance of the Court and shall simultaneously provide notice of such request for assistance on the docket in the Chapter 11 Cases.

c. The Special Committee shall consult with the Committee regarding the status of any investigation, prosecution and/or settlement of estate causes of action; provided, however, the Special Committee shall not be obligated to disclose any information subject to attorney-client privilege, attorney work product or other applicable privilege.

### III. CRO Matters & Reporting

a. The Debtors will file monthly status reports with the Court regarding the progress of the Chapter 11 Cases, including the status of the Special Committee's investigation with respect to estate causes of action. The second status report will be filed on or before May 23, 2025.

b. David J. Gordon, the Debtors' chief restructuring officer (the "**CRO**"), will report exclusively to the Special Committee. The CRO shall report only to the Special Committee and the Special Committee shall have sole and exclusive oversight over the CRO, including, for the avoidance of doubt, with respect to any decision to terminate the CRO. The Special Committee shall promptly file a notice of any such decision to terminate the CRO with the Court.

c. At the direction of the Special Committee, the CRO will be available to hold bi-weekly meetings with the Committee and FCR to provide status updates regarding the Special Committee's investigation into estate causes of action; provided, however, that the information shared will be limited to the provision of information not covered by attorney-client privilege, attorney work product or other applicable privilege.

### IV. Court Supervision

a. Each member of the Special Committee and the CRO is authorized to raise any issue with the Court with respect to matters that, in the CRO's or Special Committee member's discretion, ought to be raised with the Court and the CRO or member(s) of the Special Committee raising any issues with the Court shall simultaneously provide notice on the docket in the Chapter 11 Cases.

b. The composition of the Board and the Special Committee, as well as all other governance terms set forth herein, cannot be modified during the Chapter 11 Cases without Court approval and after notice to all parties filed on the docket in the Chapter 11 Cases.

c. To ensure the Special Committee's ability to act in the sole interests of the Debtors' estates, the members of the Special Committee will be restricted from taking any action that may impair the Debtors' applicable privileges or, by independent dissemination of any information, enhance the value of any claims against the estates or reduce the value of any estate causes of action.

**<u>Exhibit 2</u>**
Ret. Judge Robert Drain CV

# Robert D. Drain

Of Counsel, New York
Corporate Restructuring

**Skadden**



T: 212.735.3660
robert.drain@skadden.com

### Education
J.D., Columbia University School of Law, 1984 (Harlan Fiske Stone Scholar)

B.A., Yale University, 1979
(with honors; *cum laude*)

### Bar Admissions
New York

### Honors
Association of Insolvency & Restructuring Advisors (AIRA) Outstanding Judicial Service Award

New York Institute of Credit (NYIC) Conrad B. Duberstein Award for Excellence and Compassion in the Bankruptcy Judiciary

American Jewish Committee (AJC) Humanitarian Award (Financial Services Division)

Catholic Renewal Lifetime Achievement Award

Robert Drain served for over 20 years as a U.S. bankruptcy judge for the Southern District of New York, presiding over many impactful business and consumer cases.

Before retiring from the bench in 2022, Judge Drain oversaw proceedings ranging from large Chapter 11 corporate restructurings — including for Loral, RCN, Cornerstone, Refco, Allegiance Telecom, Delphi, Coudert Brothers, Frontier Airlines, Star Tribune, Readers Digest, A&P, Hostess Brands, Christian Brothers, Momentive, Cenveo, 21st Century Oncology, Tops, Global A&T, Sears, Full Beauty Brands, Sungard, Windstream, Purdue Pharma, Jason Industries, OneWebb and Frontier Communications — to Chapter 15 and other cross-border cases, including those involving Varig, S.A., Yukos (II), SphinX, Galvex Steel, TBS Shipping, Excel Maritime, Nautilus, Landsbanki Islands, Roust and Ultrapetrol. He also served as a court-appointed mediator in numerous cases, including those involving New Page, Cengage, Quicksilver, Advanta, LightSquared, Molycorp, Breitburn Energy, China Fishery and PREPA.

In his current practice at Skadden, he advises on U.S. and cross-border Chapter 11 and 15 reorganizations and litigation, out-of-court restructurings, distressed M&A and investments in troubled companies, debtor-in-possession loans and exit financings, as well as mediations.

Judge Drain is a fellow of the American College of Bankruptcy, a member and former board member of the American Bankruptcy Institute (ABI), and a former board member and officer of the National Conference of Bankruptcy Judges (NCBJ). He was chair for several years of the Bankruptcy Judges Advisory Group established by the Administrative Office of the U.S. Courts, has testified before the Senate Judiciary Committee on home mortgage loss mitigation, and currently serves on the FDIC's Systemic Resolution Advisory Committee. He was a founding member and chair of the Judicial Insolvency Network, which developed, among other issuances, guidelines that were adopted by courts in the U.S. and abroad for cooperation and communication in concurrent transnational insolvency cases. He also long annually presided over a mock transnational bankruptcy case for the International Association of Restructuring, Insolvency & Bankruptcy Professionals' (INSOL's) training program and is a member of the International Insolvency Institute. He is a member of the Business Bankruptcy Committee of the U.S. Bankruptcy Court for the Southern District of New York.

For many years, Judge Drain was an adjunct professor in St. John's University School of Law's LL.M. in Bankruptcy Program and at Pace University School of Law. He has contributed to treatises on bankruptcy law and frequently lectured on bankruptcy law in multiple programs for the Federal Judicial Center, NCBJ, ABI, AIRA, Turnaround Management Association, Practising Law Institute, American College of Bankruptcy, International Insolvency Institute, Federal Bar Council, Columbia University School of Law, University of Chicago Law School and national, international and local bar associations, as well as formal judicial and professional interchanges with judges and practitioners in South America, Europe, China, South Korea, Singapore and India. He is a member of the advisory boards of the NYU Stern Altman-Paulson Initiative on Bankruptcy, Restructuring & Financial Distress and the University of Chicago Law School's Center on Law and Finance.

Prior to his time on the court, Judge Drain spent 18 years in private practice, including more than 10 years as a partner in the bankruptcy and restructuring practice of another global law firm.

**<u>Exhibit 3</u>**
Roger Frankel CV



# Roger Frankel

Partner, Frankel Wyron LLP
Washington, D.C.
(202) 367-9128 direct
rfrankel@frankelwyron.com



### Education

- B.A., Brandeis University
- J.D., *with honors*, George Washington University Law School

### Honors

- Recognized in: *Best Lawyers in America (Woodward White - all editions)*
- Recognized in: *Chambers USA - America's Leading Business Lawyers*
- Recognized in *Chambers Global - The Worlds Leading Lawyers for Business*
- Recognized in *IFLR1000*: Leading Lawyer, United States Restructuring & Insolvency
- Recognized in: Washington, D.C. *Super Lawyers* - Business/Corporate

### Featured Articles

- *Conquering the Chaos of Uncertainty*

Roger Frankel, Founding Partner of Frankel Wyron LLP, has practiced in the areas of business reorganization and creditors rights since 1972, with an emphasis on bringing business and common sense to complex legal situations. Mr. Frankel has been appointed as a fiduciary in a multitude of mass tort cases and also counsels companies, trusts and families in connection with multi-faceted counter party disputes, often involving financial distress.

Mr. Frankel was appointed by the United States Bankruptcy Court as the Legal Representative for holders of future personal injury asbestos claims in the Chapter 11 case of W.R. Grace and now holds that same position with the W.R. Grace Personal Injury Trust. He was also appointed as the Legal Representative for the Combustion Engineering 524(g) Trust.

On August 30, 2017, Mr. Frankel was appointed by the Federal Bankruptcy Court in Delaware as the Legal Representative for those individuals who will hold claims for personal injury in the future against the various Takata companies in connection with their manufacture of defective airbags. Effective in April 2018, the Bankruptcy Court appointed Mr. Frankel to serve as the Future Claimants Representative to the Takata Airbag Tort Claimants Compensation Fund, which is the trust fund created under the plan of reorganization for the Takata entities to compensate claimants who suffer personal injuries caused by defective Takata airbag inflators.

In February of 2020, Mr. Frankel was engaged by Mallinckrodt LLC to serve as the pre-petition Future Claims Representative in an expected Chapter 11 filing by the Company. In that role, Mr. Frankel and his advisors performed due diligence regarding issues related to estimating future personal injury opioid claims against Mallinckrodt. On October 12, 2020, Mallinckrodt PLC and its subsidiaries filed for Chapter 11 protection in the Federal Bankruptcy Court in Delaware.

On June 11, 2021, the Bankruptcy Court entered an Order Appointing Mr. Frankel to serve as the Legal Representative for future opioid personal injury claimants, effective as of the Petition Date.  Mallinckrodt emerged from Chapter 11 in June, 2022.  Mr. Frankel now serves as the future claims representative for the Mallinckrodt Opioid Personal Injury Trust.

On June 10, 2021, the Bankruptcy Court for the District of Delaware appointed Mr. Frankel to serve as the Legal Representative for future personal injury claimants after a contested hearing in the Bankruptcy Case of Cyprus Mines Corporation.  Cyprus Mines filed for Chapter 11 protection on February 11, 2021 as a result of being named as a defendant in a multitude of talc-related personal injury lawsuits.

In July of 2022, Mr. Frankel was engaged by Endo International PLC, a global specialty pharmaceutical company to serve as the pre-petition Future Claims Representative in an expected Chapter 11 filing by the Company. On August 16, 2022, Endo and various affiliates filed for Chapter 11 protection in the Southern District of New York. Immediately thereafter, the Company filed a Motion to appoint Mr. Frankel as the Future Claims Representative, and on September 30, the Court entered an Order appointing Mr. Frankel to that position. Pursuant to the appointment Order, Mr. Frankel represents the interests of future, personal injury opioid claims, as well as future transvaginal-mesh claims.

Mr. Frankel served as a member of the Board of Directors of Pittsburgh Corning Corporation and Pittsburgh Corning Europe, from March, 2016 until the sale of the companies to Owens Corning in June, 2017. As an integral part of his restructuring practice, Mr. Frankel has counseled clients, including wealthy families, in connection with governance policies.

Mr. Frankel has extensive experience representing various parties in connection with Chapter 11 cases and out-of-court restructurings including clients in the gaming, real estate, manufacturing, distribution, energy, telecommunications, pharmaceutical and service industries. He has counseled clients regarding various aspects of mass-tort liabilities.

Mr. Frankel is an avid golfer and past president of Woodmont Country Club (MD) and a member of Liberty National Golf Club (NJ), and High Ridge Country Club (FL).

A sample of his notable engagements include:

**General Motors National Dealers Council.** Mr. Frankel represented the General Motors National Dealers Council in connection with the restructuring and bankruptcy of General Motors Corporation. The council represents approximately 6,000 GM dealers in the U.S. Mr. Frankel also worked closely with the National Automobile Dealers Association on this engagement.

**Buffalo Thunder Resort and Casino.** Mr. Frankel represented this New Mexico Native American Gaming Casino in a complex out of court restructuring.

**Combustion Engineering.** Mr. Frankel represented the court-appointed Legal Representative for future claim holders in connection with the negotiation and successful confirmation of Combustion Engineering, Inc. plan of reorganization, which resulted in the establishment of a trust with more than US $1 billion in assets for the benefit of present and future asbestos claimants. Mr. Frankel now acts as the Legal Representative in connection with the Trust as it processes and pays asbestos personal injury asbestos claims.

**Mallinckrodt PLC.** Mr. Frankel was engaged by this multi-national pharmaceutical company pre-petition to serve as the Legal Representative for personal injury claimants that may assert opioid personal injury claims against the Company in the future. The Company filed for Chapter 11 protection in October of 2020, and Mr. Frankel was appointed as the Future Claims Representative on a permanent basis in June, 2021. Mallinckrodt's Chapter 11 Plan of Reorganization was confirmed by the U.S. Bankruptcy Court in March of 2022, and the Company successfully emerged from bankruptcy protection in June, 2022. Mr. Frankel now serves as the Future Claims Representative for the Opioid Personal Injury Trust created upon Mallinckrodt's emergence from Chapter 11.

**Shook & Fletcher Asbestos Trust.** Mr. Frankel is the Trustee of this asbestos Trust formed in 2002 after the confirmation of the plan of reorganization of Shook & Fletcher Insulation Co. in Birmingham, Alabama. He succeeds Mr. Harry Huge who was the original Trustee of the Trust.

**Pepco/Mirant.** Mr. Frankel represented Potomac Electric Power Company (Pepco) in complex, cutting-edge litigation concerning the ability of Mirant Corporation, a debtor power generator, to reject electric power contracts. The defense of Pepco resulted in a new law in the U.S. Court of Appeals for the Fifth Circuit that requires courts to consider the public interest before approving the rejection of a power contract.

**W.R. Grace.** Mr. Frankel acted as the court-appointed Legal Representative for the holders of future claims in the confirmed Chapter 11 case of W.R. Grace & Co., et. al., a worldwide chemical company. Mr. Frankel was one of the lead negotiators that resulted in the Plan being jointly filed by the Debtors, the Asbestos Creditors Committee, the Legal Representative and the Equity Committee. The plan of reorganization became effective on February 3, 2014. On the Effective Date the Trust had in excess of $3 billion in assets to pay present and future personal injury asbestos claims.

**Admitted in**

- District of Columbia
- Maryland (inactive status)

**Court Admissions**

United States Courts of Appeals

- Third Circuit

United States District Court

- District of Columbia